UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MOLLY WHITTED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:17-cv-00241-SEB-DML |
| | ) | |
| CODY KONKLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT DAVIS'S MOTION TO DISMISS**

Plaintiff Molly Whitted ("Ms. Whitted") alleges that her rights were violated when Defendant Cody Konkle ("Mr. Konkle"), a Correctional Officer at the Indiana Department of Correction's ("IDOC") Madison Correctional Facility, pressured her into having sexual intercourse. Now before the Court for resolution is a Motion to Dismiss filed by Defendant Jan Davis, Superintendent of the Madison Correctional Facility ("Superintendent Davis"), whom Ms. Whitted has sued under 42 U.S.C. § 1983 and state-law theories [Dkt. No. 10]. For the reasons detailed herein, the motion is GRANTED.

**Factual and Procedural Background**

This litigation was initiated by Ms. Whitted, an Indiana prisoner who, at the time of the events related to this case, was housed at IDOC's Madison Correctional Facility. Ms. Whitted has alleged that on January 13, 2016 Mr. Konkle coerced her into accompanying him to the correctional facility's locked basement, where he pressured her

1

to have sexual intercourse with him, [Dkt. No. 1 ("Compl.")] at 2. She further alleges that over the course of the five previous months, Mr. Konkle "engaged in a regular pattern of manipulative comments, overly familiar, flirtatious conduct, and intimate personal association with Whitted." *Id*. She does not disclose whether she informed Superintendent Davis or any other IDOC employee of Mr. Konkle's conduct.

According to Ms. Whitted, roughly ten days after this sexual encounter, on January 23, 2016, she developed a vaginal irritation and, accordingly, asked Mr. Konkle—in advance of seeking treatment from the medical office—whether he had a sexually transmitted disease. *Id*. Mr. Konkle became angry and accused Ms. Whitted of intending to disclose the incident in order to get him fired. *Id*.

Ms. Whitted complains that following her conversation with Mr. Konkle she was transferred to the Indiana Women's Prison and segregated from other inmates on January 24, 2017. *Id*. at 3. There, Ms. Whitted received medical attention and treatment for the physical, mental, and emotional injuries she alleges that she suffered. *Id*.

Thereafter, the IDOC investigated the incident and Mr. Konkle's employment was terminated. *Id*. He was also arrested for, charged with, and pled guilty to sexual misconduct, in violation of Indiana law. *Id*.

On June 16, 2016, Ms. Whitted filed a notice of tort claim naming the IDOC, the Madison Correctional Facility, and the Office of the Indiana Attorney General. She filed her Complaint in this court on December 29, 2017.

In her Complaint, Ms. Whitted asserts "on information and belief" that Superintendent Davis "knew of, but reacted unreasonably to, an objectively substantial risk of serious harm male correctional officers posed to female inmates." *Id*. at 5. Further, Ms. Whitted claims "on information and belief" that Superintendent Davis "knew or should have known Konkle posed an excessive risk to [her] health or safety and Davis failed to respond reasonably to that risk." *Id*. Ms. Whitted has asserted that Superintendent Davis breached duties owed to her by failing to:

> implement adequate pre-employment screening for correctional officer candidates; train male staff on issues relating to supervision of female inmates; provide or review training materials prohibiting sexual misconduct; minimize access to secluded areas and one-on-one contact between male staff and female inmates; and make a good faith effort to limit the assignment of correctional officers in female dormitories to female staff.

*Id*. at 5-6. Ms. Whitted further asserts that Superintendent Davis is personally liable for the tortious conduct of Mr. Konkle under the doctrines of agency, vicarious liability, employer-employee relations, master and servant, respondeat superior, joint venture, contract, and as a result of her non-delegable duty to ensure that correctional officers at the Madison Correctional Facility comply with the Constitution and laws of the United States (namely the Eighth Amendment) and the State of Indiana. *Id*. at 6. Finally, Ms. Whitted claims that Superintendent Davis's conduct was "of such a nature that punitive damages should be imposed against her individually in an amount commensurate with the willful and malicious or recklessly indifferent acts alleged herein." *Id*.

On February 26, 2018, Superintendent Davis filed a motion seeking dismissal of Ms. Whitted's claims against her. Dkt. Nos. 10, 11 ("Def.'s Memorandum of Law"). Ms.

Whitted responded on March 14, 2018, limiting the scope of her claims against Superintendent Davis to § 1983 and state-law negligence claims. Dkt. No. 12 ("Pl.'s Resp."), the dismissal of which is sought in the pending action. Dkt. No. 14 ("Def.'s Reply").[1] The motion is ripe for ruling.

## Motion to Dismiss Standard

The motion to dismiss before us is based on Federal Rule of Civil Procedure 12(b)(6). Accordingly, the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint suffices to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Davis seeks leave to file her untimely reply to Ms. Whitted's response, which request Whitted does not oppose. Dkt. No. 15. We hereby grant the motion.

**Discussion**

Following the paring of her claims, Ms. Whitted is pursuing two claims against Superintendent Davis: a § 1983 claim against Davis in her individual capacity and a state-law negligence claim. The issues underlying the motion to dismiss are discussed below.

**Eighth Amendment Claim**

A cause of action brought under 42 U.S.C. § 1983 vindicates the constitutional rights of citizens against "[e]very person who, under color of statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The constitutional violation at issue here arises under the Eighth Amendment.

The Eighth Amendment, made applicable to the States through the Due Process clause of the Fourteenth Amendment, imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer,* 468 U.S. 57, 526–27 (1984); *see Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A prison official's conduct may be found to violate the Eighth Amendment when two elements are satisfied: First, the prisoner must demonstrate that the alleged deprivation is "sufficiently serious" when examined from an objective perspective; and second, she must show that the prison official had a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834; *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000).

To satisfy the "sufficiently serious" requirement, Ms. Whitted must be able to show that she was incarcerated under conditions that posed a substantial risk of serious harm. *See Farmer,* 511 U.S. at 834.

In prison conditions cases, the requisite culpable state of mind element involves a "deliberate indifference" to an inmate's health or safety." *Id.* This is a subjective inquiry; the prisoner must be able to show that the prison official had subjective knowledge of the risk of harm to her individually and ignored this risk. *See Farmer,* 511 U.S. at 834; *Zaya v. Sood*, 836 F3d 800, 804 (7th Cir. 2016). Such knowledge can be shown by direct or circumstantial evidence, and "a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842; *see Hall v. Bennett,* 379 F.3d 462 (7th Cir. 2004) ("A risk can be so obvious that a jury may reasonably infer actual knowledge on the part of the defendants sufficient to satisfy the subjective component of the deliberate indifference standard."). A risk is obvious where a prisoner establishes that it was "long-standing, pervasive, well-documented, or that it has been expressly noted by prison officials in the past." *See Farmer,* 511 U.S. at 842 (internal citation omitted).

A defendant can be liable only for the actions or omissions in which that person participated. *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678.

Ms. Whitted has framed her Eighth Amendment claim as follows: "On information and belief, Davis knew or should have known Konkle posed an excessive risk to Whitted's health or safety and Davis failed to respond reasonably to that risk." Compl. at 5. We begin by noting that jurisdictional allegations must be made on personal knowledge, not on information and belief, in order to invoke the subject matter jurisdiction of a federal court (*see America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992)), which makes this allegation flawed.

More significant is the fact that, even accepting the well-pleaded factual allegations as true, no facts consistent with those allegations would result in liability against Superintendent Davis in her individual capacity. There is no averment that Superintendent Davis was aware that Ms. Whitted faced the substantial risk of sexual assault. The Complaint does not assert that Ms. Whitted ever directly communicated to Superintendent Davis or any other staff member at the Madison Correctional Facility about Mr. Konkle's inappropriate actions toward her or even that he had sexually assaulted her. Ms. Whitted does not claim that she filed a prison grievance against Mr. Konkle during the five-month period during which he allegedly inappropriately engaged in flirtatious conduct or engaged in intimate behavior toward her. The proper inquiry is not whether Superintendent Davis should have known about risks to Ms. Whitted's safety (Pl.'s Resp. at 3), but rather, whether she did in fact know of such risks. *See Farmer,* 511 U.S. at 842–43. While the risk of sexual assault in prison can exist and represents a serious concern, general knowledge of such a potential danger is not tantamount to actual knowledge of the specific risk of serious harm or the offensive conduct itself. *See Butera*

7

*v. Cottey,* 285 F.3d 601, 606 (7th Cir. 2002) (finding that the defendant must have actual knowledge of the specific risk of serious harm).

Contrary to Ms. Whitted's arguments, the supervisory nature of Davis's position did not expose her to liability for the offensive conduct of Konkle (or any other employee). *Antonelli v. Sheahan,* 81 F.3d 1422, 1428 (7th Cir. 1996) ("a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of respondeat superior; the official must actually have participated in the constitutional wrongdoing.") (internal quotations omitted). Accordingly, Ms. Whitted's § 1983 claim against Superintendent Davis must be dismissed.

**Negligence Claim**

Ms. Whitted also seeks monetary damages against Superintendent Davis "in her official capacity" on a state-law negligence claim. Compl. at 1; Pl.'s Resp. at 3-4. Superintendent Davis argues that the negligence claim is barred by the Eleventh Amendment and, therefore, subject to dismissal. Def.'s Reply at 1.

When an action is brought against a state official in his or her official capacity, such suits are deemed to be "against the entity of which an officer is an agent." *Kroll,* 934 F.2d at 907 (internal quotations omitted). Under the Eleventh Amendment's sovereign-immunity doctrine, a plaintiff may not bring suit in federal court against a state or its agencies unless the state has consented to suit in federal court or Congress has abrogated the state's immunity. *See Pennhurst v. Halderman*, 465 U.S. 89, 100 (1984). Moreover, suits for monetary damages against employees of state agencies, acting in their official capacities, are treated as suits against the state and likewise are barred by the Eleventh

Amendment. *See Garcia v. City of Chi.*, 24 F.3d 966, 969 (7th Cir. 1994). The State of Indiana has not consented to this type of suit and Congress has not abrogated Indiana's immunity in this regard. Because Superintendent Davis has been sued in her official capacity for the state law violation, the Court lacks subject matter jurisdiction over this negligence claim.

## Conclusion

For the foregoing reasons, both the Eighth Amendment and negligence claims in the Complaint are dismissed.

IT IS SO ORDERED.

Date: 7/30/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Clinton Blanck
Rifkin, Blanck, Rubenstein, P.C.
cblanck@rifkinlegal.com

David Dickmeyer
Office of the Indiana Attorney General
David.Dickeymeyer@atg.in.gov

Robert Rifkin
Rifkin, Blanck, Rubenstein, P.C.
rrifkin@rifkinlegal.com